## Commonwealth v. Ulsh

*E. Robert Elicker, II,* Assistant District Attorney, for Commonwealth.

*George E. Hoffer,* Public Defender, for defendant.

SHUGHART, P. J., May 30, 1974.——This case concerns a prosecution under section 4105 of the Crimes Code of December 6, 1972, P. L. 1068 (No. 334), sec. 1, 18 C.P.S.A. §4105, for issuance of a bad check. On October 30, 1973, defendant delivered a check for $833.09 to Brenneman's Furniture in Carlisle, Pa., for

merchandise he had purchased from that establishment. Although the check was dated October 30, 1973, the seller agreed to hold it for six days to enable defendant to transfer money to this account. Defendant later ordered additional furniture from the seller and promised on *at least* three occasions in November of 1973 to discharge his debt by payment of cash in exchange for the check which was still held by the seller. Defendant never fulfilled his promise to pay, and on December 8, 1973, the seller presented the check to the bank for payment and it was dishonored. Evidence showed that defendant had opened his account with the First National Bank of Greencastle on July 30, 1973, but as of September 25, 1973, he had never deposited any funds to that account.

Under the statutory predecessor of section 4105 of the 1972 Crimes Code (section 854 of the Act of June 24, 1939, P. L. 872, sec. 854, as amended, 18 PS §4854), the three essential elements of the offense were explicitly set forth in the statute: (1) making, drawing or uttering the check; (2) intent to defraud; and (3) knowledge at the time of making that funds were insufficient: Commonwealth v. Ali, 438 Pa. 463, 466 (1970). Cases decided under that statute and *its* predecessor[1] specifically excluded post-dated checks (checks delivered before the date appearing on their face) from operation of the statutes: Commonwealth v. Kelinson, 199 Pa. Superior Ct. 135 (1962); Commonwealth v. Massaro, 97 Pa. Superior Ct. 149 (1929). In Kelinson, supra, at page 139, the Superior Court noted that "The making of a post-dated check implies a promise to deposit money in a bank at a future date and there is nothing in this statute that makes it unlawful to promise and fail to pay at a future date." Thus, a post-dated check is merely a credit instrument

[1] Act of April 18, 1919, P. L. 70, 18 PS §§2402-2405.

which, by commercial usage, puts the payee on notice that funds on deposit are insufficient at the time of making to pay the check: Kelinson, supra, at page 140. A transaction in which a post-dated check is given contains none of the elements of intent to defraud, as it is essentially a credit transaction: Massaro, supra, at 152.

In this case, the check was dated and delivered on October 30, 1973; however, at the time, defendant stated that he did not have funds in his account but would be transferring funds to his account so that the check could be deposited and cleared approximately a week later. We have no difficulty in concluding that the effect of this arrangement was the same as if defendant had delivered a check to the recipient on October 30 but which bore the date of November 6th. In either situation, the recipient was aware of an insufficiency of funds in defendant's account when the check was delivered. The check in question must be treated as a post-dated check; and therefore, under the law prior to the new Crimes Code, defendant could not be prosecuted under the bad check statute. See Kelinson and Massaro, supra. We must now determine whether there can be a prosecution for the delivery of a post-dated check under section 4105 of the 1972 Crimes Code which covers this transaction.

A *cursory* reading of section 4105 indicates there are only two elements of the offense: (1) issuing or passing a check, and (2) knowledge it will not be honored by the drawee. There is no explicit mention of "intent to defraud" as an element of the offense as there was in the prior law. Furthermore, it *might* appear that a post-dated check only rebuts the presumption of knowledge that the check will not be honored by the drawee which arises under the facts specified in section 4105(b). However, this construc-

tion ignores constitutional considerations necessary to the interpretation of bad check statutes.

Section 1922 of the Statutory Construction Act of 1972, Act of November 25, 1970, P. L. 707 (No. 230), added December 6, 1972, P. L. 967 (No. 290), sec. 3, 1 Pa. S. §1922, sets forth the well-settled rule that it is presumed the General Assembly does not intend to violate the Constitution of the United States or of the Commonwealth. Article I, section 16, of the Pennsylvania Constitution precludes imprisonment for debt after delivering up one's estate "where there is not strong presumption of fraud": Constitution Art. I, sec. 16. In Burnam v. Commonwealth, 15 S.W. 2d 256 (Ky., 1929), and Ward v. Commonwealth, 15 S. W. 2d 276 (Ky., 1929), prosecutions under a bad check statute which did not include intent to defraud as an element of the offense were held constitutionally invalid under a provision of the Kentucky Constitution identical to Article I, sec. 16 of the Pennsylvania Constitution. On the other hand, in State v. Meeks, 247 Pac. 1099 (Ariz., 1926), and Prince v. State, 93 Tex. Cr. R. 230, 247 S. W. 863 (Tex., 1923), statutes *including* "intent to defraud" as an element of the offense were held to be valid in the face of constitutional proscriptions of imprisonment for debt. In State v. Yarboro, 194 N. C. 498, 140 S. E. 216 (N.C., 1927), and Duncan v. State, 157 S. E. 670 (Ga., 1931), it was held that although "intent to defraud" was not mentioned in the statutes as an element of the offense, the statutes could be construed constitutionally as applying *only* where a fraudulent intent exists.[2]

---

[2] It has also been recognized that application of a bad check statute to postdated checks would be violative of constitutional inhibitions of imprisonment for debt: State v. Nelson, 237 N. W. 766 (S.D., 1931).

In 1967, Illinois recodified its criminal sanctions on deceptive practices (including its bad check statute), without statutory language requiring an intent to defraud: Criminal Code of 1961, Laws 1961, page 1983, sec. 17-1, amended by Laws 1967, page 3610, sec. 1, S. H. A. ch. 38, §17-1. The Appellate Court of Illinois subsequently held that recodification of the former bad check statute was *not* intended to eliminate the previously essential element of "intent to defraud," proof of which was still necessary to sustain a conviction: People v. Samples, 80 Ill. App. 2d 182, 224 N. E. 2d 284, 286, 287 (Ill., 1967).

In view of the foregoing, we feel that a constitutional construction of section 4105 of the Pennsylvania Crimes Code of 1972 requires that "intent to defraud" be considered an essential element of the offense. The Kelinson and Massaro, supra, holdings effectively negate this element of intent where a postdated check is issued. The present prosecution is, therefore, removed from the scope of the statute.

Strong policy considerations also militate in favor of section 4105's inapplicability in situations involving postdated checks because postdated checks are essentially credit instruments and application of section 4105 would render a breach of promise to pay in the future a criminal offense. Aggrieved creditors have an adequate civil remedy under the Uniform Commercial Code and should utilize that recourse. Kelinson, supra, at 140.

### ORDER OF COURT

And now, May 30, 1974, for the reasons stated, we find the defendant not guilty.