October 09, 2015

**Janice Sutton**
Gonzales County District Clerk
414 St. Joseph Street, Ste. 300
Gonzales, Texas 78629

Re:     Ex parte Julio Cesar Escamilla, Case No. 82-06-CR (In the 25tyh Judicial District Court of Gonzales County, Texas).

> ➤     Brief in Support of Original Application for Writ of Habeas Corpus

Dear Clerk:

Enclosed please find the original copy of Applicant Escamilla's Brief in Support of his Original Application for Writ of Habeas Corpus, to be filed among the papers in the above-styled and numbered cause.

Please inform Applicant at his address listed below of the date of filing and disposition of these proceedings. By copy of this letter, I am forwarding a true and correct copy of this instrument to the Respondent.

Thank you for your kind Attention to this matter.

Sincerely,

Julio Escamilla, Applicant, Pro se
TDCJ-C ID#91748965
Wynne Unit
810 FM 2821
Huntsville, Texas 77349

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 15 2015

Abel Acosta, Clerk

Enclosure

Cc:     Abel Acosta, Clerk
        Texas Court of Criminal Appeals

        Gonzales County District Attorney

        File

CASE NO. 82-06-CR
(WR-40, 148-03)

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| JULIO CESAR ESCAMILLA, | § | 25TH JUDICIAL DISTRICT COURT |
| APPLICANT, PRO SE | § | GONZALES COUNTY, TEXAS |

**APPLICANT ESCAMILLA'S BRIEF IN SUPPORT OF
APPLICATION FOR WRIT OF HABEAS CORPUS**

**COMES NOW,** Julio C. Escamilla, Applicant, proceeding in *pro se* in the above-styled

and numbered cause, files this his Brief in Support of Application for Writ of Habeas Corpus and

would respectfully show the Court as follows:

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 15 2015

Abel Acosta, Clerk

**I.**

**Jurisdiction**

This Court has jurisdiction over the subject matter and parties pursuant to Tex. Code

Crim. Proc. Ann. Article 11.07, *et. seq.*

**II.**

**Confinement and Restraint**

Applicant is being unlawfully detained by William Stephens, Director, Texas Department

of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), by virtue of a judgment

and sentence in Case number 82-06-CR[1] for the felony offense of Aggravated Assault with a

deadly weapon (Counts I & II) (habitual enhanced), wherein after a jury trial he was found guilty

and the jury assessed punishment at two life terms of imprisonment to be served concurrently on

October 20, 2011. A direct appeal was taken to the Thirteenth Court of Appeals in Case No. 13-

11-00727-CR, who affirmed the judgment(s)n and sentence(s) in an unpublished opinion dated

---

[1] *See State of Texas v. Julio Cesar Escamilla,* Case No. 82-06-CR, Oct. 20, 2011.

1

August 02, 2012.[2] Applicant did not file a Petition for Discretionary Review (PDR). Applicant also did not file a petition for writ of certiorari. This proceeding followed.

## III.

## Applicant's Allegations

Applicant presented the followings grounds seeking habeas corpus relief in his original writ application:

1. Applicant complains his guilty plea was entered involuntarily based upon the erroneous advice of trial counsel;

2. Applicant complains he was denied the effective assistance of trial counsel;

3. Applicant complains that he was denied the right to the effective assistance of counsel on his first appeal of right; and

4. Applicant complains the State has placed him in double jeopardy for the same offense arising from the original offense transaction. *Id.*

*Ex parte Julio Cesar Escamilla, State Writ Appl.* At 6-12.

## V.

## Statement of Facts

Applicant was indicted on two counts of aggravated assault with a deadly weapon-habitual offender. *See* TEX. PENAL CODE ANN. §§ 12.42, 22.02 (West 2005). On November 20, 2006, appellant pleaded no contest and entered into a plea agreement. The trial court accepted appellant's plea, deferred further proceedings and placed him on deferred adjudication community supervision for ten years. The conditions of appellant's community supervision were modified on December 18, 2008.

---

[2] See *Escamilla v. State*, Case No. 13-11-00727-CR (Tex. App. Aff'd Aug. 02, 2012, no pet.).

2

On May 10, 2011, the State filed its second amended motion to adjudicate guilt, alleging twelve violations of the terms and conditions of appellant's community supervision. Appellant pleaded "true" to the third violation and "not true" to the remaining eleven alleged violations. After hearing evidence, the trial court found all of the State's allegations "true" with the exception of one,[3] revoked appellant's community supervision, adjudicated him guilty and sentenced him to life imprisonment.

## V.

### Argument & Authorities

In his first ground presented seeking habeas corpus relief, Applicant complains that his guilty plea was involuntarily entered based upon the erroneous advice of trial counsel as follows: Applicant complains that his guilty plea was entered unknowingly, unintelligently and therefore, involuntarily based upon the erroneous advice and counsel's coercive tactics by him threatening the Applicant that CPS would take his children and place them in foster care if he did not take the original plea bargain offered by the State and approved by the trial court of ten (10) years unadjudicated probation, which was later revoked on in each of the two counts pled to and given concurrent life sentences by the trial court, which in turn overborne Applicant's original intent and wish, which was to proceed to a trial by jury. But for trial counsel's coercive tactics in pressuring the Applicant to accept the State's plea offer, Applicant would not have accepted the plea offer from the State, but would have instead insisted on proceeding to trial by jury.

### Standard of Review

---

[3] Allegation number 5 alleged that Escamilla violated the 19th condition of his probation in that he failed to provide verification of working the required community service hours for the months of June 2010, July 2010, August 2010, September 2010, October 2010, and November 2010, and is delinquent 42.50 hours of community service restitution. The court did not find this allegation to be true.

The standard for establishing a claim of ineffective assistance of counsel is enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984). In support of an ineffective assistance claim, the petitioner must show (1) counsel's performance was deficient, and (2) the deficient performance may have prejudiced the petitioner's case. *Strickland,* 466 U.S. at 688. Thus, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Counsel's performance must be judged on the totality of the representation. *Id.* at 670. In *Hill v. Lockhart,* the Supreme Court held that the *Strickland* test applies to counsel's advice to a defendant whether to accept the plea. The voluntariness of the plea depends on whether the advice was within the range of competence demanded of attorneys in criminal cases.

### Application of Law to Facts

*Ground One (restated)*

Applicant avers he was initially approached by trial counsel with an offer of ten (10 ) years deferred un adjudicated probation versus regular community supervision made by the State in this case. Initially, Applicant informed counsel he was not interested in the State's plea offer, rejecting same. However, after counsel came back and told him if he did not accept the State's offer CPS was going to take his child into protective custody and inevitably he would probably end up losing all custody of his child, which placed Applicant into the cruel dilemma of risking losing custody of his children if he did not accept the State's plea offer, or take the plea offer and if later revoked be susceptible to the full range of punishment, which in this case was five to ninety-nine years or life imprisonment, so Applicant acquiesced and accepted the State's plea offer under duress. Later, his probation was eventually revoked resulting in him receiving two

4

life terms of imprisonment, which prejudiced the Applicant

Counsel failed to properly advise and admonish Applicant that CPS could not take his children if he chose not to accept the plea offer made by the State and had Applicant been aware of this fact, he would not have accepted the State's plea offer and plead guilty, but would have insisted to proceeding to trial by jury. Failure to inform a defendant of the applicable law to his case, the defenses available to him, which results in a guilty plea, can lead to a finding of ineffectiveness under *Strickland*. Petitioner has demonstrated that a reasonable probability exists that the result of the proceedings would have been different, but for counsel's errors. Any shortcomings of a defendant's plea bargain will cast doubt on the validity of his plea if it was based on the constitutionally defective advice of counsel. *Bradshaw v. Stumpf*, 125 S.Ct. 2398 (2005).

## Ground Two (restated)

In his second ground seeking habeas corpus relief, Applicant complains that he was denied the effective assistance at trial in violation of the Sixth Amendment at trial as follows: (a) Counsel was ineffective for failing to conduct a full and adequate investigation of the facts and applicable law by failing to request funds from the Court to hire a private investigator on Applicant's behalf who was incarcerated and indigent at the time, prejudicing the defense; (b) Counsel's conduct was deficient by failing to object to the instant indictment, which alleged two ways that Applicant could have allegedly committed both counts of aggravated assault with a deadly weapon for the same offense charged in the disjunctive; (c) Counsel was ineffective for failing to object to the fact that there was no specific date alleged in the original indictment, failing to provide "notice" to the Applicant as required by law; (d) Counsel was ineffective for failing to object to the State not proving up the sequence of the two enhancement paragraphs, prejudicing the defense; (e) Applicant avers that counsel was ineffective for not objecting to the trial court failing to properly admonish him that if he were to violate the available under the law - life, which is what he inevitably received after his deferred supervision was revoked; (f) Counsel was ineffective for failing to object to

5

the original indictment presented against Applicant, which erroneously stated Applicant was charged with a second degree felony, "with possible enhancements," again failing to properly provide the requisite "notice" required by law. As the State went back and added by correctly articulating the case number, court of conviction and date of judgment at the time Applicant agreed to accept the State's plea offer, prejudicing the defense.

Applicant has alleged facts that, if true, might entitle him to relief. *Strickland v. Washington*, 466 U.S. 668 (1984); *Ex parte Patterson*, 993 S.W.2d 114, 115 (Tex. Crim. App. 1999). In these circumstances, additional facts are needed. As the Court of Criminal Appeals ("CCA") previously held in *Ex parte Rodriguez*, 334 S.W.2d 294, 294 (Tex. Crim. App. 1960), the trial court is the appropriate forum for findings of fact. Applicant prays, as he did in his original writ application that this Honorable Court either sustain this ground for relief or in the alternative, order trial counsel to prepare and file an affidavit with the Clerk of this Court responding to the ineffective assistance of trial counsel claims presented by Applicant in the instant application seeking habeas corpus relief.

### A. Counsel was ineffective for failing to conduct a full and adequate investigation.

Applicant avers that his trial attorney was ineffective for failing to conduct a full of the facts and applicable law by failing to request funds from the Court to hire a private investigator on Applicant's behalf who was incarcerated and indigent at the time, prejudicing the defense. Applicant submits that had counsel obtained funds from the trial court for a private investigator, it would have assisted him in locating all witnesses who had knowledge of the events surrounding the instant offense, as well as enabled him to determine the witness(es) willingness and availability to testify on Applicant's behalf. The record is silent as to why counsel chose not to seek funds from the trial court to hire a private investigator. Therefore, Applicant reurges this Court to designate this as a previously uncontroverted issue requiring resolution and order trial counsel to prepare and file an affidavit with the clerk of the Court responding to the instant

6

allegations.

As Justice Sutherland explained in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The right to the assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Texas Constitution. This right to the assistance of counsel has long been understood to include a "right to the effective assistance of counsel." *See McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). The integrity of our criminal justice system and the fairness of the adversary criminal process are assured only if an accused is represented by an effective attorney. *See United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). Absent the effective assistance of counsel "a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). A defendant is constitutionally entitled to have counsel acting in the role of an advocate. *Anders v. California*, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967).

Normally, the reviewing court looks to the totality of the representation and the particular circumstances of the case in evaluating the reasonableness of an attorney's conduct. *See, Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). The review conducted of defense counsel's representation is "highly deferential and presumes that counsel's actions fell within a wide range of reasonable assistance." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001)(citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). It is the defendant's burden to overcome this presumption by proving his ineffective assistance of counsel claim by a preponderance of the evidence. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992); *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); *also see, United States v.*

7

*Cronic, supra* at 658, 104 S.Ct. at 2046 (the burden rests on the accused to demonstrate a constitutional violation).

**B. Counsel's conduct was deficient by failing to object to the instant indictment.**

Applicant submits trial counsel's conduct was deficient by failing to object to the instant indictment, which alleged two ways that Applicant could have allegedly committed both counts of aggravated assault with a deadly weapon for the same offense charged in the disjunctive.

## CHAPTER 21. INDICTMENT AND INFORMATION

Art. 21.01. "INDICTMENT". An "indictment" is the written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense.[4]

The State may join separate offenses in one indictment with each offense alleged as a separate count as long as the offenses arise out of the same criminal episode. The term "criminal episode" is defined as offenses committed pursuant to the same transaction or scheme or the repeated commission of the same or similar offenses.[5] As a general rule, the term "count" in an indictment is used to charge each offense itself, and "paragraph" refers to the portions of a count that charge the methods, theories, or "manner or means" of committing that offense.[6] Texas courts of appeals have historically looked at the substance of the allegation in an indictment, not the terminology or headings used, to determine its character as a "count" or "paragraph."[7]Though the Court of Criminal Appeals has subscribed to this understanding, it has

---

[4] Acts 1965, 59th Leg., p. 317, ch. 722, Sec. 1, eff. Jan. 1, 1966.
[5] See Tex. Code Crim. Proc. Art. 21.24; Tex. Penal Code §3.01.
[6] *See Id.; Owens v. State*, 96 S.W.3d 668, 673 (Tex. App.—Austin 2003, no pet.); *Renfro v. State*, 827 S.W.2d 532, 535 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).
[7] *See, e.g., Tyson v. State*, 172 S.W.3d 172, 177 (Tex. App.—Fort Worth 2005, pet. ref'd); *Patterson v. State*, 96 S.W.3d 427, 433 (Tex. App.—Austin 2002), aff'd by 152 S.W.3d 88 (Tex. Crim. App. 2004); *Gahl v. State*, 721 S.W.2d 888, 895 (Tex. App.—Dallas 1986, pet. ref'd).

not been as explicit about it as the courts of appeals.[8]

Here, the State failed to follow the guideline articulated in *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005) and *Francis v. State*, 36 S.W.3d 121, 124-25 (Tex. Crim. App. 2000) (op. on reh'g).

Accordingly, Applicant would respectfully request that this Honorable Court sustain this ground for relief and recommend the writ issue.

### C. Counsel was ineffective for failing to object to the fact that there was no specific date alleged in the original indictment.

**Art. 21.02. REQUISITES OF AN INDICTMENT**
An indictment shall be deemed sufficient if it has the following requisites:
1. It shall commence, "In the name and by authority of The State of Texas".
2. It must appear that the same was presented in the district court of the county where the grand jury is in session.
3. It must appear to be the act of a grand jury of the proper county.
4. It must contain the name of the accused, or state that his name is unknown and give a reasonably accurate description of him.
5. It must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented.
6. The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.
7. The offense must be set forth in plain and intelligible words.
8. The indictment must conclude, "Against the peace and dignity of the State".
9. It shall be signed officially by the foreman of the grand jury.

Acts 1965, 59th Leg., p. 317, ch. 722, Sec. 1, eff. Jan. 1, 1966.

In this instance, Applicant complains that the indictment that was served on him by the county Sheriff's Department failed to contain a date, "on or about" date or other specific date to provide Applicant with the required information required for him to muster a defense against

---

[8] *Martinez*, 225 S.W.3d at 554 (because each "count" alleges a single offense, an indictment cannot authorize more convictions than there are counts).

9

thereto. Counsel was ineffective for failing to make this determination and file a motion to quash said indictment for not being in compliance with the State law of indictments.

**D. Counsel was ineffective for failing to object to the State not proving up the sequence of the two enhancement paragraphs, prejudicing the defense.**

During the proceedings against Applicant the State alleged two paragraphs within the indictment for enhancement purposes. However, the sequence of the paragraphs included were not in sequence having been previously committed prior to the instant indictment and each other, creating a fatal variance between the facts alleged in the indictment and the evidence adduced at trial, prejudicing the defense.

**E. Applicant avers that counsel was ineffective for not objecting to the trial court failing to properly admonish him as to punishment.**

Applicant avers that counsel was ineffective for not objecting to the trial court failing to properly admonish him that if he were to violate the conditions of his probation he would be susceptible to the full range of punishment available under the law - life, which is what he inevitably received after his deferred supervision was revoked. At the time Applicant accepted the State's plea bargain offer for ten years' probation in exchange for a plea of guilty to the instant charge, the trial court nor trial counsel properly admonished him that if his probation was ever revoked he would be facing anytime within the applicable punishment range. Eventually, Applicant's probation was revoked. Appellant contends the district court failed to properly admonish him of the possible consequences of a violation of supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(a) (West Supp. 2000). The court and trial counsel's failure to provide this information is a ground for reversal if the defendant shows that he was harmed. *Id.* Appellant argues that because of the inadequate admonishment, his guilty plea was involuntary and he was unable to intelligently decide whether to invoke his statutory right to move for adjudication

10

within thirty days of deferment. *See Brown v. State*, 943 S.W.2d 35, 41-43 (Tex. Crim. App. 1997). Among the consequences of a violation of the conditions of deferred adjudication supervision is adjudication of guilt, after which assessment of punishment and imposition of sentence continue as if adjudication had not been deferred. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp. 2000). This means that following adjudication, the court may assess any punishment within the range applicable to the offense. *McNew v. State*, 608 S.W.2d 166, 176-77 (Tex. Crim. App. 1980) (op. on reh'g). This is true even if the original guilty plea was made pursuant to a plea bargain. *Ditto v. State*, 988 S.W.2d 236, 239-40 (Tex. Crim. App. 1999).

### F. Counsel was ineffective for failing to object to the original indictment presented against Applicant, which erroneously stated Applicant was charged with a second degree felony.

Counsel was ineffective for failing to object to the original indictment presented against Applicant, which erroneously stated Applicant was charged with a second degree felony, "with possible enhancements," again failing to properly provide the requisite "notice" required by law. As the State went back and added by correctly articulating the case number, court of conviction and date of judgment at the time Applicant agreed to accept the State's plea offer, prejudicing the defense. Applicant adopts his arguments contained in subsection (B) & (C) and incorporates the same herein by reference.

Accordingly, Applicant would respectfully request this Honorable Court sustain this ground for review or in the alternative, designate this as a previously uncontroverted issue requiring resolution and order trial counsel to prepare and file an affidavit with the clerk of this Court and additionally allow Applicant thirty-days (30) to respond to same after it is filed with the clerk.

11

*Ground Three (restated)*

In his third ground, Applicant complains that he was denied the right to the effective assistance of counsel on his first appeal of right as follows: (a) Counsel on appeal was ineffective for failing to provide Applicant with a copy of the Appellant's Brief and memorandum opinion of the Thirteenth Court of Appeals affirming his judgment and sentence in each count he was convicted of committing, as well as his right to file a pro se Petition for Discretionary Review (PDR) and the associated time frame for doing so. As the Court of Criminal Appeals (CCA) previously held in *Ex parte David Wilson,* No. 72759, (en banc) on original submission, it is the professional duty of an appellate lawyer to explain the meaning and effect of an appellate court decision in his client's case, to acquaint his client with available options for further review of the case, and to assist his client with the decision whether to seek such review. *Id.,* 891 S.W.2d at 944 (Op. on Reh'g). This is so because the judgment of an intermediate appellate court in a criminal case does not become final at once. Tex. Code Crim. Proc. Ann. arts. 42.045, 44.45(a); and former Tex. R. App. P. 86(a) (1986, repealed 1997). Even though this Court has construed limitations to counsel's duty as prescribed by art. 26.04, particularly that counsel has no duty to file a petition for discretionary review, there is nothing within the plain meaning of art. 26.04(a) to indicate the Legislature intended to discharge appellate counsel of all duties to his client with regard to appellant filing a petition for discretionary review pro se. In fact, art. 26.04(a) by its own language charges appointed appellate counsel with an expansive duty to his indigent client that is not limited to his client's first appeal of right. Of particular significance to both Jarrett and the present case is art. 26.04's mandate that an appointed attorney represent his client "until . appeals [plural] are exhausted. ." Pro se appellants should not be expected to possess the legal

12

knowledge necessary to prepare thoughtful and meritorious petitions for discretionary review when our case law is replete with examples of petitions which were refused because appellate attorneys failed to comply with the rules of appellate procedure. *See, Degrate v. State*, 712 S.W.2d 755 (Tex.Cr.App.1986) (any petition which fails to set forth adequate reasons for this Court to exercise its discretion to review a court of appeals' opinion is subject to summary refusal); *Pumphrey v. State*, 689 S.W.2d 466 (Tex.Cr.App.1985) (petition not prepared in conformity with the rules will [be] [(sic)] summarily refused); *Delgado v. State*, 687 S.W.2d 769 (Tex.Cr.App.1985) (failure of counsel to comply with rules will cause this Court to summarily refuse petition for discretionary review that has been filed on behalf of appellant). (b) Counsel on appeal was ineffective for failing to inform the Applicant at the time his judgment and sentence(s) were affirmed that he had the right to file a pro se Petition for Discretionary Review ("PDR") within thirty days of his appeal being affirmed, so he could exercise that right, prejudicing the Applicant's ability to pursue his further appellate rights. Accordingly, Applicant would respectfully request that this Honorable Court designate this issue as a previously uncontroverted issue requiring resolution and thereafter order appellate counsel to prepare and file an affidavit with the Clerk of this Court responding to the instant allegations of ineffective assistance of Appellate counsel presented against him herein. Additionally, Applicant would request that he be timely provided with a copy of said affidavit and allowed thirty days after receipt of same to file a responsive pleading. In Ex parte Jarrett, we held that appellate counsel's duty to his client extends beyond the rendition of judgment by the court of appeals since, under state law, "the judgment of an intermediate appellate court in a criminal case does not become final at once." Until the appellate judgment does become final, we held, "the appellate lawyer still represents his client and remains under a duty to provide him with satisfactory legal

13

counsel." To pass constitutional muster, that legal counsel must meet an objective standard of reasonableness under the Sixth Amendment. We acknowledged that appellate counsel had no constitutional obligation to represent the appellant in a petition for discretionary review. But in denying the State's motion for rehearing, we left intact our holding on original submission that "appellate counsel does have the duty . to advise the appellant of the possibility of review by this

Court as well as expressing his professional judgment as to possible grounds for review and their merit, and delineating the advantages and disadvantages of any further review."

*Ground Four (restated)*

In his final and fourth ground presented for habeas review, Applicant complains the State has placed him in double jeopardy for the same offense arising from the original offense transaction. *Id.*

## Double-jeopardy

In the United States, the Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The clause serves to protect individuals from 1) repeated prosecutions for the same offense after acquittal or conviction and 2) multiple punishments for the same offense.[9] The clause is enforceable against the states through the 14th Amendment.[10] Texas also has its own double jeopardy provision, which is largely interpreted in lock-step with the federal provision.[11] Nevertheless, double jeopardy provisions existed for hundreds of years before the creation of the

---

[9] *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Ex parte Chaddock*, 369 S.W.3d 880 (Tex. Crim. App. 2012).
[10] *Benton v. Maryland*, 395 U.S. 784, 793 (1969).
[11] Tex. Const., Art. 1, §14. Even in the context of mistrials, the Court of Criminal Appeals has ostensibly reverted to a parallel construction of the two provisions. *See Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007), overruling *Bauder v. State*, 921 S.W2d 696 (Tex. Crim. App. 1996); but *see Ex parte Masonheimer*, 220 S.W.3d 494 (Tex. Crim. App. 2007) (three judges dissenting) (fudging the sharp boundary delineated in *Oregon v. Kennedy*, 456 U.S. 667 (1982)).

14

North American variants grafted from the English common law and even prior to four of King Henry II's knights slaughtering Thomas Becket within the walls of Canterbury Cathedral in 1170, taking root at least by Greek and Roman times.[12] Where a person faces re-prosecution after acquittal or conviction, the critical issue is whether the same offense is involved. Of course, *Blockburger* and its "same elements" analysis govern. The test is "whether each [statutory] provision requires proof of a fact which the other does not."[13] If both statutory provisions require proof of an element that the other provision does not, the two offenses are not the same. But, if only one offense requires proof of a fact that the other does not—i.e., the elements of a lesser-included offense are wholly subsumed within the greater offense—a conviction for both the greater offense and its lesser-included offense will usually violate double jeopardy.[14]

Here Applicant complains that the State violated his right not to be twice placed in jeopardy by alleging in the indictment in Count I that Applicant had "caused bodily injury," and in Count II, Applicant "had threatened to cause bodily injury." *Id. State Appl.* at 12. Applicant avers the State is attempting to take two bites of the proverbial apple and that his substantive rights were violated by it doing so.

## CONCLUSION

In sum, Applicant avers that his right to due process, a fair trial, the effective assistance of both trial and appellate counsel, and being placed twice by the State in jeopardy has violated his substantial rights and denied him a fair trial. Applicant therefore prays the Court

---

[12] David S. Rudstein, A Brief History of the Fifth Amendment Guarantee Against Double Jeopardy, 14 Wm. & Mary Bill of Rts. J. 193 (2005), http://scholarship.law.wm.edu/wmborj/vol14/iss1/8. Maybe something of the sort existed in a more primitive form at the time of Alexander the Great too.

[13] *Blockburger v. United States*, 284 U.S. 299 (1932). Not Blockbuster as it has been called in all seriousness—but possibly inadvertently—on more than one occasion in open court. The *Blockburger* test was reaffirmed in United States v. Dixon, 509 U.S. 688 (1993), overruling *Grady v. Corbin*, 495 U.S. 505 (1990).

[14] *See Brown v. Ohio*, 432 U.S. 299, 304 (1977); *Ex parte Chaddock*, 369 S.W.3d at 883.

15

grant all relief requested herein and any other relief he might be otherwise entitled to.

**SIGNED** on this the 10th day of September 2015

Respectfully submitted,

Julio Escamilla, Applicant, Pro se
TDCJ-CID#91748965
Wynne Unit
810 FM 2821
Huntsville, Texas 77349

## CERTIFICATE OF SERVICE

I, Julio Escamilla, Applicant, pro se, herein certify that a true and correct copy of this instrument was sent to the Gonzales County District Attorney, by placing same in the prison mail box, first-class, postage paid, on September 10, 2015, addressed to:

**Gonzales County District Attorney**
414 St. Joseph Street, Ste. 300
Gonzales, Texas 78629

SIGNED on this the 10th day of September 2013.

Julio Escamilla, Applicant, Pro se

16